# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ATRIUM MEDICAL CENTER,
     Plaintiff,

    v.

UNITEDHEALTHCARE INSURANCE
COMPANY, et al.,
     Defendants.

Case No. 19-cv-680

Dlott, J.

Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

This matter is before the Court on defendant UnitedHealthcare Insurance Company

(United)'s Motion to Dismiss (Doc. 21), plaintiff Atrium Medical Center (Atrium)'s response in

opposition (Doc. 25), and United's reply (Doc. 26).  The Court recommends that the motion be

granted and that Atrium's claim against United be dismissed with prejudice.

## I.  Background[1]

Atrium is a hospital that provided emergency medical services to United's insured, Khron

Powell, between June 12, 2017 through June 18, 2017.  Atrium was not an "in-network provider"

or a "contracted provider" with United during this period.  On June 12, 2017, Mr. Powell

executed a document titled "General Consent and Agreement" (Doc. 19), which included a

"<u>FINANCIAL AGREEMENT AND ASSIGNMENT</u>" provision.[2]  Therein, Mr. Powell

purported to "assign to [Atrium] all insurance and other benefits to which [he was] entitled for

the services provided by [Atrium]."  (*Id.* at PAGEID #: 64).  The Certificate of Coverage, Riders,

Amendments, and Notices for Mr. Powell's group policy (Policy) with United, however,

contains an anti-assignment provision:

---

[1] Unless otherwise noted, background facts are taken from Atrium's amended complaint (Doc. 15) and amendment thereto (Doc. 19), which are accepted as true for purposes of this motion.
[2] Atrium refers to this document as "Exhibit A" in its amended complaint (*see* Doc. 15 at ¶ 7), but it was not initially attached thereto.  Atrium corrected the omission by later filing the document as an amendment to its amended complaint.  (*See* Doc. 19).

> You may not assign your Benefits under the Policy to a non-Network provider without our consent. When an assignment is not obtained, we will send the reimbursement directly to you (the Subscriber) for you to reimburse them upon receipt of their bill. We may, however, in our discretion, pay a non-Network provider directly for services rendered to you. In the case of any such assignment of Benefits or payment to a non-Network provider, we reserve the right to offset Benefits to be paid to the provider by any amounts that the provider owes us.

(Doc. 21-1, Ex. 1 to Stalinski Aff. at PAGEID #: 131).[3]

Upon Mr. Powell's discharge from Atrium, a corresponding claim for $197,628.26 was billed to United. United unilaterally paid $51,371.53 of the claim and directed Atrium to seek the amounts of $4,462.85 and $1,242.32 directly from Mr. Powell (the Policy's coinsurance and deductible amounts, respectively). United then denied the $140,551.56 claim balance without reason or explanation despite Atrium's repeated inquiries.

On July 12, 2019, Atrium filed an action in the Court of Common Pleas for Warren County, Ohio. The state court complaint alleged that Atrium provided medical services to United's insured, United improperly denied $146,256.73 of the related claim, and United ignored Atrium's efforts to appeal. (Doc. 2 at PAGEID #: 18). United removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 1441 on the grounds that there is diversity of citizenship between the parties and Atrium's claim is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* (Doc. 1).

Following removal, the Court granted leave to Atrium to amend its complaint. (*See* Docs. 14, 15, 19). The amended complaint contains three counts, and only the first pertains to United. It does not invoke ERISA or any specific cause of action but generally alleges that United improperly denied $140,551.56 of Atrium's claim, that United is indebted to Atrium for

---

[3] The Court considers the Policy a pleading for purposes of United's motion to dismiss because it is "referred to in [the] complaint and central to the claim." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (citation omitted). Atrium "concedes [that] the Certificate of Coverage controls United's payment obligations." (Doc. 25 at PAGEID #: 262).

the unpaid services rendered to Mr. Powell, and that United has failed to pay this debt notwithstanding repeated appeals to United and requests for explanation regarding its calculations.  United moved to dismiss the amended complaint with prejudice for lack of standing, failure to state a claim for relief, and failure to exhaust administrative remedies.

## II.    Standard of review

United argues that this matter should be dismissed because Atrium has neither direct nor derivative standing under § 502(a) of ERISA.  While United frames the question of Atrium's standing as a matter of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the issue of standing raised by United is a question of "statutory standing" under ERISA (i.e., whether Atrium is a beneficiary or participant who may sue under 29 U.S.C. § 1132(a)(1)(B)) and not Article III standing under the Constitution.  *See Bridges v. American Elec. Power Co., Inc*., 498 F.3d 442, 444 (6th Cir. 2007).  Therefore, the appropriate standard of review is that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[4]

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party.  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).  Only "a short and plain statement of the claim showing that the pleader is

---

[4] Although the Sixth Circuit has sometimes referred to statutory standing in the ERISA context as jurisdictional, *see Roberts v. Hamer*, 655 F.3d 578, 581 n.2 (6th Cir. 2011), the Court believes that it would not do so in this case.  In *Bridges*, 498 F.3d at 445, the Sixth Circuit adopted the Seventh Circuit's analysis of ERISA statutory standing from *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007),  which held:

> [e]xcept in extreme cases illustrated by our example of the attempt of the plan participant's creditor to enforce a claim to ERISA benefits, the question whether an ERISA plaintiff is a "participant" entitled to recover benefits under the Act should be treated as a question of statutory interpretation fundamental to the merits of the suit rather than as a question of the plaintiff's right to bring the suit.

*Id.* at 803-04.  Atrium does not take such an extreme position.

entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotation marks omitted) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. Analysis

### A. Statutory standing

United first argues that Atrium does not have statutory standing to bring an ERISA claim because there is no contractual relationship between United and Atrium, and therefore Atrium is neither a plan participant nor a beneficiary who may bring suit to recover benefits under the Policy. (Doc. 21 at 7) (citing *Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 545-46 (6th Cir. 2016)). United also argues that Atrium does not have derivative standing under ERISA because there has been no valid assignment of Mr. Powell's benefits to Atrium as the Policy expressly prohibits an assignment of benefits without United's consent. While Atrium does not mention ERISA in its complaint or response in opposition, it nevertheless argues that to the extent that the Policy's anti-assignment provision is enforceable, equitable doctrines prevent United's assertion thereof.

4

As a threshold matter, the Court must address whether ERISA preempts Atrium's cause of action against United. The Court then turns to the standing issues raised by United and Atrium's defenses thereto.

### 1. Preemption

ERISA allows for complete preemption. *Loffredo v. Daimler AG*, 500 F. App'x 491, 495 (6th Cir. 2012) (citing *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 209 (2004)). A claim is completely preempted by section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), if both prongs of a two-factor test are satisfied: "(1) the plaintiff complains about the denial of benefits to which he is entitled 'only because of the terms of an ERISA-regulated employee benefit plan'; and (2) the plaintiff does not allege the violation of any 'legal duty (state or federal) independent of ERISA or the plan terms.'" *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016) (quoting *Gardner. Heartland Indus. Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013)).

Atrium's claim against United satisfies both prongs. As to the first, its claim lacks any state-law label and, "in essence[,]" seeks "the recovery of an ERISA plan benefit." *S. Ohio Med. Ctr. v. Griffith*, No. 1:19-cv-261, 2019 WL 5884280, at *5 (S.D. Ohio Nov. 12, 2019), *report and recommendation adopted*, 2020 WL 581836 (S.D. Ohio Feb. 6, 2020) (quoting *K.B. by & through Qassis v. Methodist Healthcare - Memphis Hosps.*, 929 F.3d 795, 800-01 (6th Cir. 2019)). The sole relationship between Atrium and United is the Policy and whether and to what extent United must pay the benefits delineated therein to Atrium. As to the second, Atrium makes no argument that its claim is based on a legal duty independent of ERISA. It readily acknowledges that "[t]he crux of [its] claim is that United has failed to act in accordance with the Certificate of Coverage." (Doc. 25 at PAGEID #: 262). Atrium's claim is completely preempted by ERISA. *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.,* 399 F.3d 692, 699

(6th Cir. 2005) ("[B]ecause the contract at issue in the breach-of-contract claim is the ERISA plan itself, the claim is clearly preempted.") (quoting *Darcangelo v. Verizon Commc'n, Inc.*, 292 F.3d 181, 194 (4th Cir. 2002)).

While the prevailing practice in the context of a completely preempted claim is to grant leave to amend the complaint accordingly, this is not a requirement. *See Ackerman v. Fortis Benefits Ins. Co.*, 254 F. Supp. 2d 792, 818 (S.D. Ohio 2003) (citation omitted). Some courts have "simply recognized the existence of the ERISA claim." *Id.* (citations omitted). *Cf. Loffredo*, 500 F. App'x at 495 ("[C]omplete preemption amounts to an exception to the well-pleaded complaint rule that *converts* a state-law claim that could have been brought under § 1132 into a federal claim . . . and makes the *recharacterized* claims removable to federal court. . . .") (citations omitted) (emphasis added). The parties take no position on this point. For purposes of its Report and Recommendation, the Court recasts Atrium's claim against United as one arising under 29 U.S.C. § 1132.

### 2. Derivative standing

Only plan participants and beneficiaries have standing to sue for civil enforcement of benefit plans. *Brown*, 827 F.3d at 545 (citing 29 U.S.C. § 1132(a)(1)(B)). Merely having a right to payment does not confer standing, derivative or otherwise. *Id.* at 545-46. *See also Merrick*, 175 F. Supp. 3d at 116 ("'[R]ight to payment' under the plan 'does not a beneficiary make.'") (quoting *Rojas v. Cigna Health and Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015)). Atrium does not allege that it has a contractual relationship with United such that it is a participant or beneficiary with direct standing to sue under ERISA. Rather, Atrium alleges that Powell assigned his right to benefits under the Policy to Atrium, thereby conferring derivative standing on Atrium.

The Sixth Circuit recognizes derivative standing for health care providers but "only when a patient 'actually convey[s]' a 'valid assignment of benefits' under the plan." *Brown*, 827 F.3d at 546 (quoting *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991)).  United contends that Atrium does not have a valid assignment of benefits because the Policy expressly prohibits an assignment of benefits without United's consent.  United argues that the anti-assignment provision contained in the Policy is enforceable and precludes statutory standing.

Every Circuit that has considered the question has upheld the enforceability of anti-assignment provisions in ERISA plans.  *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018) (collecting cases); *Griffin v. Comm. of the UAW Retiree Med. Benefits Trust,* No. 16-12002, 2016 WL 6777854, at *2 (E.D. Mich. Nov. 16, 2016) (citing *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) (collecting cases)).  Courts within the Sixth Circuit have enforced these provisions as well.  *See, e.g., Riverview Health Inst. LLC v. Med. Mut. of Ohio*, No. 3:07-cv-354, 2008 WL 4449482, at *8-9 (S.D. Ohio Sept. 30, 2008), *aff'd*, 601 F.3d 505 (6th Cir. 2010) (denying leave to amend to add estoppel claim because the policy at issue contained an unambiguous anti-assignment provision); *Children's Hosp. Med. Ctr. of Akron v. Youngstown Assocs. in Radiology, Inc. Welfare Plan*, No. 4:11-cv-506, 2018 WL 4539282, at *3 (N.D. Ohio Sept. 21, 2018) (dismissing complaint due to lack of standing in view of unambiguous anti-assignment clause).  Atrium does not argue otherwise, and the Court therefore finds that the anti-assignment provision in the Policy is enforceable.

Atrium nevertheless argues that United's course of dealing (i.e., making a payment of benefits to and interacting with Atrium notwithstanding the anti-assignment provision) either

estops United from asserting or demonstrates waiver of United's right to assert the anti-assignment provision. As further basis for the application of estoppel, Atrium argues that "[United] failed to disclose the anti-assignment provision in response to any of Atrium's appeal attempts and it failed to indicate the provision's existence on any explanations of payment." (Doc. 25 at PAGEID #: 261).

      i.    **Estoppel**

Estoppel is available in ERISA cases but "cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (citing *Fink v. Union Central Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996) and *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 458 n.12 (11th Cir. 1996)).[5] Discussing estoppel in the context of an anti-assignment provision, the Sixth Circuit has since remarked that "[n]o language in *Sprague* suggests that an insurer has an affirmative duty to make health care providers or its insureds aware of this kind of language." *Riverview*, 601 F.3d at 522.

As noted above, the Policy's anti-assignment provision reads:

> **You may not assign your Benefits under the Policy to a non-Network provider without our consent.** When an assignment is not obtained, we will send the reimbursement directly to you (the Subscriber) for you to reimburse them upon receipt of their bill. **We may**, however, in our discretion, **pay a non-Network provider directly** for services rendered to you. In the case of any such assignment of Benefits **or** payment to a non-Network provider, we reserve the right to offset Benefits to be paid to the provider by any amounts that the provider owes us.

---

[5] In *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 443 (6th Cir. 2010), the Sixth Circuit declined to enforce this limitation "because neither of the rationales invoked by *Sprague* to justify its general prohibition against application of estoppel to unambiguous provisions is sufficient to outweigh the extraordinary circumstances presented by this case." The *Bloemker* court established "extraordinary circumstances" as a necessary element to bypass the ambiguity requirement set out in *Sprague*. *Id.* at 443-44. In *Bloemker*, the plaintiff had begun receiving early retirement benefits in a certain amount pursuant to written confirmation of that amount. *Id.* at 438. Nearly two years later, he was informed that he had been overpaid and was required to repay the excess. *Id.* The complaint at bar does not allege any such extraordinary circumstances.

(Doc. 21-1, Ex. 1 to Stalinski Aff. at PAGEID #: 131) (emphasis added).

Consistent with *Sprague*, United contends estoppel does not apply because the Policy contains an unambiguous anti-assignment provision. United cites two cases in which courts have examined identical provisions: *Merrick*, 175 F. Supp. 3d at 114, and *Aviation W. Charters, Inc. v. United Healthcare Ins. Co.*, No. cv-14-00338, 2014 WL 5814232, at *3 (D. Ariz. Nov. 10, 2014). Like here, the plaintiffs in *Merrick* cited United's "long-standing pattern and practice of directly paying Plaintiffs for services provided under the plan" notwithstanding the anti-assignment provision to support their estoppel claim. *Id.* at 120. Far from exhibiting extraordinary circumstances, such as "intentional inducement or deception," the court found that the payments from United to the plaintiffs were "entirely routine. . . ." *Id.* at 121. The court concluded, "[t]he fact that United made direct payments to Plaintiffs, *as it was explicitly authorized to do under the plan*, does not estop it from raising the anti-assignment provision to challenge Plaintiffs' standing." *Id.* (citation omitted) (emphasis added). In *Aviation W.*, the court did not discuss whether the plaintiff had alleged extraordinary circumstances but found nothing ambiguous about the anti-assignment provision. 2014 WL 5814232 at *3. The court found that the references in the provision to assignment and direct payment were "alternatives, not equivalents." *Id.* Moreover, it found that reading an exercise of discretion to pay directly (one alternative) as overruling the consent-to-assignment requirement (another alternative) "would be illogical." *Id.*

Atrium argues that United's failure to disclose the anti-assignment provision and United's course of dealing with Atrium are grounds to estop United from enforcing the anti-assignment provision. Atrium cites two cases in support of this position: *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901 (M.D. Tenn. 2013), and *Spectrum Health v. Valley*

*Truck Parts*, No. 1:07-cv-1091, 2008 WL 2246048 (W.D. Mich. May 30, 2008).  In *Productive*, the court considered hundreds of claims for which a health care provider sought payment.  *Id.* at 922.  During an eight-year period, the insurance company paid professional components of these claims but denied technical components, even where *all* parts of the claims would have violated the applicable insurance policies' anti-assignment provisions.  *Id.* at 922-23, 927.  The plaintiff alleged that this disparate treatment was intended as punishment for refusing to join the defendant's provider network.  *Id.* at 908.  The court concluded that these unique facts justified the plaintiff's detrimental reliance for purposes of estoppel.  *Id.* at 921-22, 927.[6]  In *Spectrum*, the court did not consider an anti-assignment provision but remarked, in a footnote, that "[e]ven if the Court were to conclude that Spectrum did not obtain a valid assignment from Clark, the Court would nonetheless conclude that Defendants are estopped from raising the issue of Spectrum's right or authorization to pursue a claim for payment of benefits."  2008 WL 2246048 at *4 n.4 (citing *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992)).  It found that the defendant's failure to raise the validity of an assignment clause for more than a year and a half of dealing with the alleged assignee would have established estoppel. *Id.*

The cases cited by Atrium are not persuasive.  The Court agrees with the two decisions cited by United that the anti-assignment provision in the Policy is unambiguous.  Atrium has alleged no extraordinary circumstances that would upset the ordinary rule that estoppel is unavailable to alter the meaning of an unambiguous policy term.  To the extent that Atrium relies on a duty of United to affirmatively disclose the anti-assignment provision in its course of

---

[6] While it does not cite *Bloemker*, *see supra* n.4, or discuss extraordinary circumstances as such, *Productive* hints at the distinction drawn in that case: "the alleged factual circumstances here present a much more compelling case for the application of the estoppel doctrine than the circumstances at issue in *Riverview*."  *Id.* at 922.

dealing, the argument is foreclosed by *Riverview*. 601 F.3d at 522. Atrium cannot overcome its statutory standing deficiency via estoppel.

### ii. Waiver

Atrium also argues that it has statutory standing in this lawsuit because United waived its right to assert the anti-assignment provision of the Policy. Atrium alleges that United forfeited its right to assert this defense when it made payments to Atrium under the Policy and interacted with Atrium despite the anti-assignment provision.

The Sixth Circuit has not ruled on whether the theory of waiver may be applied in the ERISA context. *See Trane U.S. Inc. v. Neblett*, 291 F. Supp. 3d 848, 852 (M.D. Tenn. 2018); *Schornhorst v. Ford Motor Co.*, 606 F. Supp. 2d 658, 670 (E.D. Mich. 2009). *See also Badalament v. United of Omaha Life Ins. Co.,* No. 05-cv-74932, 2007 WL 1006908, at *4 (E.D. Mich. Mar. 30, 2007) ("The federal common law of ERISA for waiver is not well-developed."). As a general matter, district courts are to "apply federal common law rules of contract interpretation in making [their] determination[s]." *Univ. Hosps. of Cleveland v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Tr.*, 441 F.3d 430, 437 (6th Cir. 2006) (quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998)). To the extent that ERISA is silent, federal common law should "fill the statutory gap." *Trane*, 291 F. Supp. 3d at 852 (quoting *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 762 (6th Cir. 2017)). *See also Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991), *abrogated on other grounds by M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) and discussing the incorporation of equitable estoppel, "ERISA authorize[s] the federal courts to fashion a body of federal common law to enforce the agreement that these statutes bring within their jurisdiction").

Most circuits that have considered waiver in the ERISA context have either applied it or indicated a willingness to apply it under appropriate circumstances.[7] *See, e.g., Am. Orthopedic*, 890 F.3d at 454 (holding that "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal" did not demonstrate "an evident purpose to surrender" an objection to a provider's standing in a federal lawsuit such that waiver could apply) (quoting *Brown v. City of Pittsburgh*, 186 A.2d 399, 401 (Pa. 1962)). Some circuits have explicitly set an enhanced standard under which waiver can apply in the ERISA context, holding that waiver will not be found unless the circumstances show either a detriment to the plaintiff or a benefit to the defendant to justify the waiver. *See Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 649 (7th Cir. 1993) ("The waiver that plaintiff [sought] . . . [wa]s a something-for-nothing kind of waiver whereby [the insurer] will be held to the terms of its misleading representations for no reason other than that it made them."); *Gordon v. Deloitte & Touche, LLP Grp. Long Term Disability Plan*, 749 F.3d 746, 753 (9th Cir. 2014) (agreeing with *Thomason* that wavier in the ERISA context requires "something more" than a misrepresentation); *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1348 (11th Cir. 1994) (declining to find waiver of eligibility requirement where it was not shown that defendant knew the insured was ineligible or that the insurer unjustly benefitted from the mistake).

Though not always explicitly stated as such, decisions in other circuits seem consistent with this enhanced showing. The Second, Fifth, and Ninth Circuits have found waiver in situations where insurers received an accompanying benefit in the form of reduced administrative expense or premiums. *See Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 378

---

[7] Only the Fourth Circuit has denied outright the application of waiver (and estoppel) in the ERISA context. *White v. Provident Life & Acc. Ins. Co.*, 114 F.3d 26, 29 (4th Cir. 1997) ("[F]ederal common law under ERISA . . . does not incorporate the principles of waiver and estoppel. . . . ERISA . . . does not provide for such unwritten modifications of ERISA plans.") (citation omitted).

(2d Cir. 2002) (holding that insurer waived its right to assert lack of disability in denying a claim, where the plaintiff had proffered evidence of her disability and the insurer initially had requested medical records, but the insurer ultimately canceled the request to save administrative expense); *Pitts By & Through Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 353, 357 (5th Cir. 1991) (where insurance policy required at least ten employees, and yet insurer accepted and cashed insurance premium checks "after learning beyond all doubt" that only one employee remained on the group policy, insurer waived its right to enforce the ten-employee requirement); *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 938, 941 (9th Cir. 2017) (citing *Pitts* favorably and finding wavier where the insurer accepted premiums despite knowing that the insured did not meet the evidence of insurability requirement).

Within the Sixth Circuit, district courts have taken different approaches.  Some courts have concluded that wavier is never available in the ERISA context.  *See, e.g., Tendercare (Mich.), Inc. v. Dana Corp.*, No. 02-72263, 2002 WL 31545992, at *4 (E.D. Mich. Oct. 18, 2002) ("[I]t is black letter law that standing cannot be waived.") (citation omitted); *Griffin v. Comm. of the UAW Retiree Med. Benefits Tr.*, No. 16-12002, 2016 WL 6777854, at *3 (E.D. Mich. Nov. 16, 2016) ("[C]ourts do not recognize waiver in the ERISA context.") (citation omitted).  Others have entertained or applied the doctrine.  *See, e.g., Trane*, 291 F. Supp. 3d at 853 (finding that waiver could apply if a plaintiff showed either detrimental reliance or consideration, but the plaintiff had not established waiver in this case); *Agee v. Jennie Stuart Med. Ctr.*, No. 5:05-cv-154, 2007 WL 923090, at *6 (W.D. Ky. Mar. 23, 2007) (same); *Schornhorst*, 606 F. Supp. 2d at 671-72 (discussing the split in authority but ultimately finding "insufficient basis for application of the doctrine of waiver."); and *Health Cost Controls v.*

*Wardlow*, 825 F. Supp. 152, 156-57 (W.D. Ky. 1993) ("HCC intentionally relinquished a known right, and thereby waived the protection of its reimbursement provision.").

The Court finds that the Sixth Circuit would likely join the majority of circuits that have (or have been willing to) apply waiver in the ERISA context. The Sixth Circuit has defined waiver as "the intentional relinquishment or abandonment of a known right." *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697 (6th Cir. 2019) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (quotation marks and citation omitted).[8] Even without reaching the question of whether an enhanced waiver analysis is warranted, the Court concludes that waiver is inapplicable to this case even under its basic definition, and United did not abandon its right to assert the anti-assignment provision of the Policy to show Atrium's lack of statutory standing in this case.

None of Atrium's allegations demonstrate that United intentionally relinquished the anti-assignment provision. Particularly without any legal duty to volunteer the fact of anti-assignment provision, United's failure to advise Atrium of this provision falls short of an "intentional relinquishment" thereof. Atrium also implies that because United "conducted business as usual in processing and paying" part of the claim at issue, United waived enforcement of the anti-assignment provision. (Doc. 25 at PAGEID #: 261). But as the Court has already determined, the plan unambiguously provides that United had the option of paying claims directly without assigning benefits. To interpret United's direct payment as intentionally relinquishing the right to enforce the anti-assignment provision would effectively write out the

---

[8] To the extent that Wisconsin (*see* Doc. 21-1 at PAGEID #: 90) or Ohio law would apply on the question of waiver, the outcome would be the same as the standards for waiver are identical. *See Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 311 (Wis. 2010) ("[W]aiver is the intentional relinquishment or abandonment of a known right.") (quoting *State v. Ndina*, 761 N.W.2d 612, 670 (Wis. 2009)); *State ex rel. Wallace v. State Med. Bd. of Ohio*, 732 N.E.2d 960, 965 (Ohio 2000) ("'Waiver' is defined as a voluntary relinquishment of a known right.").

14

alternative nature of the provision.  *See Sprague*, 133 F.3d at 404 ("[T]o enforce something other than the plan documents themselves . . . would not be consistent with ERISA.").  *Cf. Am. Orthopedic*, 890 F.3d at 454 (an insurer's routine claim processing and payment do not rise to the level of a "clear, unequivocal, and decisive act" demonstrating intentional surrender of a known right).  Atrium cannot overcome its statutory standing deficiency via waiver.

In sum, Atrium's state law claim against United is preempted by ERISA.  To proceed, Atrium is therefore required to demonstrate ERISA statutory standing.  Because it is not an ERISA plan participant or beneficiary, Atrium's only avenue to statutory standing as a health care provider is derivative.  While a valid assignment of benefits under an ERISA plan may establish derivative standing, Atrium has failed to establish a valid assignment under the United Policy.  The Policy's anti-assignment provision is enforceable and forecloses derivative standing for Atrium.  Short of equitable relief in the form of estoppel or waiver, which are unavailable for the reasons discussed above, Atrium has no statutory standing to bring a claim against United.

### B.  Failure to exhaust

Assuming, arguendo, that Atrium has derivate standing to assert a claim against United, United argues that Atrium's claim should nevertheless be dismissed for failure to state a claim upon which relief can be granted.  In the alternative, United argues that Atrium's claim should be dismissed because it has failed to exhaust its administrative remedies.  For purposes of the pending motion, even if the Court were to find that Atrium has statutory standing and raises a plausible ERISA claim, it nevertheless has failed to exhaust its administrative remedies under the Policy.

While the ERISA statute does not contain an administrative exhaustion requirement, the Sixth Circuit has "read an exhaustion requirement into the statute."  *Hitchcock v. Cumberland*

*Univ. 403(b) DC Plan*, 851 F.3d 552, 560 (6th Cir. 2017) (quoting *Fallick v. Nationwide Mut.*

*Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998)). Administrative exhaustion "enables plan fiduciaries

to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a

factual record which will assist a court in reviewing the fiduciaries' actions." *Ravencraft v.*

*UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) (quoting *Makar v. Health Care*

*Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 83 (4th Cir. 1989)) (emphasis deleted). Dismissal

without prejudice is appropriate to the extent that a plaintiff has not established exhaustion. *See*

*Falandays v. Penn Treat Am. Corp.*, 114 F. App'x 738, at *1 (6th Cir. 2004); *Borman v. Great*

*Atl. & Pac. Tea Co.*, 64 F. App'x 524, 529 (6th Cir. 2003); *Weiner v. Klais and Co., Inc.*, 108

F.3d 86, 88, 91 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534

U.S. 506 (2002).

  The entirety of Atrium's allegations in the amended complaint related to exhaustion are

that "[United] has . . . repeatedly ignored [Atrium]'s appeal efforts and requests for explanations

regarding the calculation of rate of payment." (*See* Doc. 15 at ¶ 14). In its response to the

motion to dismiss, Atrium alleges that "[i]t is unclear what additional attempts [it] needed to

make to exhaust its administrative remedies." (*See* Doc. 25 at PAGEID #: 262).

  The Policy contains a detailed "Questions, Complaints and Grievances" section, which

sets forth the internal grievance procedure that must be followed to contest any adverse action

taken by United. (*See* Doc. 21-1 at PAGEID #: 132-35). Atrium's complaint and response in

opposition make no mention of this grievance procedure section, nor does Atrium allege the

specific actions it took to exhaust United's internal grievance procedure. Atrium's threadbare

allegations do not demonstrate exhaustion.

Atrium contends that if the Court finds it failed to exhaust its administrative remedies, the Court should excuse the non-exhaustion based on futility. The Court finds that Atrium has not established the futility exception to exhaustion.

Exhaustion may be excused if a plaintiff demonstrates futility—that "resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Coomer*, 370 F.3d at 505 (quoting *Fallick*, 162 F.3d at 419). Futility must be shown by a "clear and positive indication . . . that [a plaintiff's] claim will be denied on appeal" and "not merely . . . doubt[] that an appeal will result in a different decision." *Id.* (quoting *Fallick*, 162 F.3d at 419). Denial of benefits alone is insufficient to demonstrate futility. *Id.* Generally, the Sixth Circuit has applied the futility exception to exhaustion:

> (1) when the "Plaintiffs' suit [is] directed to the legality of [the plan], not to a mere interpretation of it," *Constantino v. TRW, Inc.,* 13 F.3d 969, 975 (6th Cir. 1994) (emphases omitted); *see also Fallick,* 162 F.3d at 420, and (2) when the defendant "lacks the authority to institute the [decision] sought by Plaintiffs," *Hill v. Blue Cross & Blue Shield of Mich.,* 409 F.3d 710, 719 (6th Cir. 2005).

*Dozier v. Sun Life Assur. Co. of Can.*, 466 F.3d 532, 535 (6th Cir. 2006).

Atrium argues that where, as here, an insurer has failed to comprehend the nature of the plaintiff's claim, courts will not require exhaustion based on futility. Atrium analogizes its position to that of the plaintiffs in *Constantino*, 13 F.3d at 975, arguing that United "repeatedly misunderstands or mischaracterizes Atrium's claim." (Doc. 25 at PAGEID #: 263).

*Constantino* is distinguishable. In *Constantino*, the plaintiffs challenged the *legality* of the ERISA Plan, not the defendant's *interpretation* of the Plan. The Sixth Circuit reasoned that if the plaintiffs were to resort to the administrative process, the defendant "would merely recalculate their benefits and reach the same result." *Constantino*, 13 F.3d at 975. The court therefore excused exhaustion of administrative remedies because it would be futile.

Here, in contrast, Atrium does not dispute the legality of United's Policy but rather United's calculation of benefits under the Policy. Atrium's amended complaint contains allegations related entirely to calculations and payments under the Policy and not its legality. (*See* Doc. 15 at ¶ 14) ("[United] has improperly denied this claim, without reason, and repeatedly ignored [Atrium]'s appeal efforts and requests for explanations regarding the calculation of rate of payment.").

Atrium's allegations are far more like those made in *Borman*, where the Sixth Circuit refused to excuse exhaustion based on futility:

> Borman vaguely alleged in his complaint that he had engaged in a "lengthy period" of fruitless discussions concerning his benefit claims in controversy, and had filed some sort of unspecified claim, with unnamed officers of A&P. He has further asserted that the defendants had not timely informed him of the available internal claim and review procedures, nor had they referred him to the Pension Committee. However, in the trial court, Borman filed no affidavit nor produced any other evidence in opposition to the Eckert affidavit and the documents offered by the defendants in support of their motion to dismiss the complaint. Most importantly, Borman failed to evince, or even allege, that he had made any effort to adhere to A&P's formal written internal benefit claim and review procedures, or had even inquired of any A&P agent about those procedures.

64 F. App'x at 528. *See also Riverview*, 2008 WL 4449482 at *7 ("While Plaintiffs describe some efforts to obtain payments from Medical Mutual of Ohio, there are no allegations detailing any efforts to pursue administrative remedies under any of ERISA plans.").

Like the plaintiff in *Borman*, Atrium generally alleges that United ignored Atrium's "appeal efforts" and requests for information without alleging a factual basis for such efforts and requests. Atrium's allegations do not engender a "clear and positive indication" of futility such that the Court is convinced to excuse the exhaustion requirement. *Coomer*, 370 F.3d at 505 (quoting *Fallick*, 162 F.3d at 419). The Court concludes that even if Atrium has statutory

standing to bring suit, and even if Atrium has stated a plausible claim for relief under 29 U.S.C. § 1132, it has failed to demonstrate administrative exhaustion or futility thereof.[9]

### C. Dismissal with prejudice

Were Atrium's only deficiency its procedural failure to exhaust, dismissal without prejudice would be appropriate. *See Ravencraft*, 212 F.3d at 344 (vacating and remanding decision of the district court to dismiss a case with prejudice, where the dismissal had been based solely on failure to exhaust). The Court also recommends here, however, that the Atrium's claim against United be dismissed with prejudice for lack of statutory standing. Atrium was on notice of United's desire to seek dismissal with prejudice and failed to respond with any indication that it could cure a statutory standing defect. Dismissal with prejudice is appropriate. *See DaVita, Inc. v. Marietta Mem'l Hosp. Emp. Health Benefit Plan*, No. 2:18-cv-1739, 2019 WL 4574500, at *7 (S.D. Ohio Sept. 20, 2019), *appeal docketed* No. 19-3049 (6th Cir. Oct. 23, 2019) (dismissing claims for which the plaintiffs had no statutory standing under ERISA with prejudice); *Merrick*, 175 F. Supp. 3d at 126 (same); *Martin v. Gen. Motors Corp.*, 753 F. Supp. 1347, 1358 (E.D. Mich. 1991) (determination that the plaintiff lacked standing under ERISA was a decision on the merits warranting dismissal with prejudice).

---

[9] In the context of ERISA, the Sixth Circuit has upheld dismissal at the pleading stage based on failure to exhaust. *See Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 721, 723 (6th Cir. 2005) (affirming dismissal pursuant to Fed. R. Civ. P. 12(b)(6) motion where certain plaintiffs had "not sufficiently alleged that they exhausted the administrative remedies available to them.").

**IT IS THEREFORE RECOMMENDED THAT:**

United's motion to dismiss (Doc. 21) be **GRANTED** and count one of amended

complaint against United be **DISMISSED WITH PREJUDICE.**[10]

Karen L. Litkovitz
United States Magistrate Judge

---

[10] Atrium voluntarily dismissed defendant URSA Major Corporation without prejudice.  (Doc. 33).  Therefore, the only remaining defendant in this case is Khron Powell, who has not responded to the complaint despite being served with process.  (Doc. 31).

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ATRIUM MEDICAL CENTER,                    Case No. 19-cv-680
     Plaintiff,                          Dlott, J.
                                          Litkovitz, M.J.
     vs.

UNITED HEALTHCARE INSURANCE
COMPANY, et al.,
     Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).